## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MELISA GONZALEZ, individually )
and on behalf of a class and subclass )
of similarly situated persons, et al., )
)
                        Plaintiffs, )
)     **CIVIL ACTION**
v. )
)     **No. 06-2163-KHV**
PEPSICO, INC., et al., )
)
                        Defendants. )
_____ )

### MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

MeLisa Gonzalez, Mark Haley, Linda Haley, Jenifer Noel Guth, Ryan James Coffelt and Richard

Hernandez bring suit individually and on behalf of similarly situated persons against PepsiCo, Inc.

("Pepsi"), Sunny Delight Beverages Co. ("Sunny Delight"), Rockstar, Inc. ("Rockstar"), Coca-Cola

Enterprises, Inc. ("Coke Enterprises") and John Doe Companies six through 100.[1]  Under Kansas law,

plaintiffs allege breach of the implied warranty of merchantability under Article II of the Kansas

Uniform Commercial Code, K.S.A. § 84-2-101 et seq. (Count I), unfair trade practices under the Kansas

Consumer Protection Act, K.S.A. § 50-623 et seq. (Count II), and unjust enrichment (Count III).  This

matter is before the Court on Defendants' Joint Motion To Dismiss Second Amended Complaint

(Doc. #37) filed November 14, 2006, and Plaintiffs' Motion For Leave To File Sur-Reply Memorandum

In Opposition To Defendants' Motion To Dismiss (Doc. #55) filed January 26, 2007.  For reasons stated

---

[1]       Plaintiffs' second amended complaint also named the Coca-Cola Company ("Coke") as
defendant.  On May 14, 2007, plaintiffs voluntary dismissed Coke from the case.  See Notice of
Voluntary Dismissal With Prejudice As To The Coca-Cola Company (Doc. #70).

below, the Court overrules the motions.[2]

## Legal Standards

Defendants seek to dismiss plaintiffs' claims under Rules 12(b)(1) and (b)(6), Fed. R. Civ. P., for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted. Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations. Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)). Defendants challenge the face of the complaint, so the Court presumes the accuracy of plaintiffs' factual allegations and does not consider evidence outside the complaint. Id. Courts may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." Scheideman v. Shawnee County Bd. of County Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against jurisdiction. Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999). Plaintiffs bear the burden of showing that jurisdiction is proper, see id., and must demonstrate that the case should not be dismissed, see Jensen v. Johnson County Youth Baseball League, 838 F. Supp. 1437, 1439-40

---

[2]     The Tenth Circuit has stated that generally, a nonmoving party should be given an opportunity to respond to new material raised for the first time in a reply brief. Green v. New Mexico, 420 F.3d 1189, 1196 (10th Cir. 2005). Here, plaintiffs seek leave to file a surreply "in order to respond to a number of specific mischaracterizations in defendants' reply brief." Plaintiffs' Sur-Reply Memorandum In Opposition To Defendants' Joint Motion To Dismiss (Doc. #55-2) filed January 26, 2007 at 1. Plaintiffs do not, however, identify any new material which defendants presented in their reply, and the Court therefore finds that they are not entitled to file a surreply on the motion. In any event, plaintiffs' proposed surreply is obviated by the Court's findings on the issues which plaintiffs argue in their surreply.

(D. Kan. 1993).  Conclusory allegations of jurisdiction are not enough.  Id.

A Rule 12(b)(6) motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiffs can prove no set of facts which would entitle them to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of plaintiffs.  See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987).  In reviewing the sufficiency of plaintiffs' complaint, the issue is not whether plaintiffs will prevail, but whether they are entitled to offer evidence to support their claims.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements that must be proved.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

### Factual Background

Plaintiffs' second amended complaint is summarized as follows:

Plaintiffs purchased beverage products from defendants which contained sodium benzoate and ascorbic acid, citric acid or erythoribic acid.  The Food and Drug Administration ("FDA") has reported that these ingredients may interact to form benzene, a hazardous substance which the Environmental Protection Agency ("EPA") knows to potentially cause anemia, nervous systems disorders and immunosuppression in persons who are exposed at levels greater than five parts per billion for short periods of time.  In the event of long term exposure to levels greater than five parts per billion, benzene may cause cancer and chromosomal aberrations.  The EPA has established five parts per billion as the maximum acceptable level of benzene in drinking water.

In December of 1990, representatives of the National Soft Drink Association ("NSDA") (now,

the American Beverage Association) met with the FDA to discuss the discovery of benzene in certain beverage products.[3]  In a memorandum dated January 18, 1991, the FDA reported that when the beverages have been exposed to heat and light, benzene may form as a result of the interaction between sodium benzoate and ascorbic acid, citric acid or erythoribic acid.  The FDA then called on the NSDA to identify methods to impede the formation of benzene in the beverage products and to adopt voluntary measures among manufacturers to address the problem.  While some manufacturers developed alternative product formulations, others continued to manufacture beverage products containing the combination of sodium benzoate and ascorbic acid, citric acid or erythoribic acid to reduce costs and preserve flavor.  Between 1995 and 2001, the FDA conducted blind testing on soft drinks and juices which revealed levels of benzene in some products above the five parts per billion level approved for drinking water.

In the spring and summer of 2006, independent testing revealed the presence of benzene levels in beverage products which defendants manufactured and/or distributed.[4]  Specifically, Pepsi manufactures "Diet Pepsi Wild Cherry;" Sunny Delight manufactures "Sunny D Baja Orange," "Sunny D Baja Berry" and "Sunny D Intense Lemon Lime;" Rockstar manufactures and Coke Enterprises distributes "diet Rockstar."  Each of these beverage products has been found to contain benzene at levels greater than five parts per billion.  Since 1990, Pepsi has known of the potential presence of benzene in beverage products and has conducted its own research to confirm the existence of benzene in its beverage products.  Since at least the beginning of 2006, Sunny Delight has known of

---

[3]      Pepsi is a leading member of the NSDA.  The Complaint does not reveal whether Sunny Delight, Rockstar and Coke Enterprises are also members.

[4]      Laboratory testing has not been conducted to confirm these results.

the potential presence of benzene in beverage products.  All defendants have manufactured and/or distributed their beverage products deliberately and notwithstanding their knowledge that such products have a tendency to contain benzene at levels greater than five parts per billion.[5]  In doing so, defendants did not disclose to consumers that such products had a tendency to contain benzene at levels greater than five parts per billion.  Plaintiffs would not have purchased defendants' beverage products had defendants disclosed the tendency of those products to contain benzene.

Plaintiffs have sued defendants individually and on behalf of similarly situated persons seeking economic damages and injunctive relief.  They allege breach of implied warranty of merchantability under Article II of the Kansas Uniform Commercial Code ("UCC"), K.S.A. § 84-2-101 et seq., unfair trade practices under the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 et seq., and unjust enrichment under Kansas common law.  Plaintiffs do not allege that any of the beverage products which they purchased and consumed actually contained benzene or that they have suffered any personal injuries.

### Analysis

Defendants argue that the Court should dismiss plaintiffs' complaint for lack of standing because plaintiffs have not suffered any injury in fact.  Defendants further argue that plaintiffs have failed to state claims for breach of the implied warranty of merchantability, unfair trade practices and unjust enrichment.  Finally, defendants argue that the Court should defer primary jurisdiction to the FDA.

---

[5]     Plaintiffs have sued John Doe Companies 6 through 100, other companies who have manufactured or distributed beverage products known to possibly contain high levels of benzene, but whose identities are unknown to plaintiffs.

## I.   Plaintiffs' Standing

Defendants argue that the Court should dismiss plaintiffs' claims under Rule 12(b)(1) for lack of standing.[6]  Specifically, defendants argue that plaintiffs have not suffered any injury in fact because they have alleged no personal injury and they received what they paid for when they purchased their beverage products.  Plaintiffs concede that they have not suffered any personal injury, but argue that they have alleged economic damages which are sufficient to create an injury in fact in this case.

The concept of constitutional standing is derived from the case or controversy requirement of Article III of the Constitution, and requires plaintiffs to show that they have suffered an injury in fact which is fairly traceable to the challenged action of defendants and is likely to be redressed by a favorable decision.  See Robey v. Shapiro, Marianos & Cejda, ,L.L.C., 434 F.3d 1208, 1210-11 (10th Cir. 2006).  The elements of constitutional standing are not mere pleading requirements, but rather are an indispensable part of plaintiffs' case.  Utah v. Babbitt, 137 F.3d at 1204 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).  Thus, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Defenders of Wildlife, 504 U.S. at 561.  On a motion to dismiss, the Court must accept as true all material allegations of the complaint, and must construe the complaint in favor of plaintiffs.  Babbitt, 137 F.3d at 1204 (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)).  An injury in fact is one that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  See Schmidt v. Cline, 127 F. Supp.2d 1169, 1172 (D. Kan. 2000) (citing Bear Lodge Multiple Use Ass'n v. Babbitt, 175 F.3d 814, 821 (10th Cir. 1999)).  For

---

[6]       Because plaintiffs' standing implicates subject matter jurisdiction, see San Juan County, Utah v. United States, 420 F.3d 1197, 1203 (10th Cir. 2005), the Court considers defendants' argument under Rule 12(b)(1) which governs dismissals for lack of subject matter jurisdiction.

purposes of alleging an injury in fact, general factual allegations of injury resulting from defendants'
conduct will suffice because such allegations are presumed to "embrace those specific facts that are
necessary to support the claim." Id. (citing Defenders of Wildlife, 504 U.S. at 561).

Here, the complaint alleges that plaintiffs suffered economic damages resulting from the
difference between the purchase price of the beverage products as warranted and their actual value
considering the potential presence of benzene in those products.  Generally, economic injury is a
paradigmatic form of injury in fact. See Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 291 (3d
Cir. 2005) (citing San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1130 (9th Cir. 1996))
(economic injury clearly sufficient basis for standing); see also 15 James Wm. Moore et al., Moore's
Federal Practice § 101.40(5)(a) (3d ed. 2006) (pecuniary injury provides sufficient basis for standing).
More specifically, plaintiffs' benefit of the bargain damages are sufficient to demonstrate an injury in
fact.[7] See Trew v. Volvo Cars of N. Am., L.L.C., No. CIV-S-051379, 2006 WL 306904, at *6 (E.D.

---

[7]      Much of defendants' cited authority on this issue is misplaced.  For example, citing
Porter v. Merck & Co., No. 04-CV-586, 2005 WL 3719630 (Kan. Dist. Ct. Aug. 19, 2005), defendants
argue that plaintiffs have not suffered a legally cognizable injury under Kansas law.  Porter holds that
an individual who purchases and uses a prescription drug which provides pain relief and does not cause
physical injury is not an aggrieved consumer under the KCPA.  Id. at *3.  While Porter may speak to
plaintiffs' ability to state a claim under the KCPA, the question whether plaintiffs allege an injury
sufficient to establish standing is distinctly broader than the question whether plaintiffs have stated a
claim under the KCPA.  Similarly, In re Bridgestone/Firestone, Inc., 288 F.3d 1012 (7th Cir. 2002), and
Heindel v. Pfizer Inc., 381 F. Supp.2d 364 (D.N.J. 2004), which consider the viability of breach of
warranty and consumer fraud claims under state law, are unpersuasive on the issue of standing.  See In
re Bridgestone/Firstone, 288 F.3d at 1017-18 (considering claims on review of class certification under
Rule 23); Heindel, 381 F.3d at 386 (dismissing claims on summary judgment).
        Defendants also rely heavily on Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315 (5th Cir. 2002), in
which the Fifth Circuit held that a plaintiff who claims only economic injury in a products liability
action does not assert a cognizable injury for standing purposes.  Id. at 320-21.  Notably, Rivera focused
on plaintiff's attempt to impose liability through products liability law while alleging benefit of the
bargain damages grounded in contract law.  Id. (defendant alleged failure to warn and sale of defective
product but sought only out of pocket expenses).  According to the Fifth Circuit, this oscillation between
                                                                                        (continued...)

Cal. Feb. 8, 2006) (allegation that plaintiff would not have paid as much for vehicle had she known of defect establishes injury in fact).  Because plaintiffs have alleged economic damages sufficient to establish an injury in fact, the Court overrules defendants' motion to dismiss for lack of standing.

**II.     Sufficiency Of Plaintiffs' Claims Under Kansas Law**

Defendants argue that under Rule 12(b)(6), plaintiffs have not stated a claim on which relief can be granted.  Defendants generally argue that the Kansas Product Liability Act ("KPLA"), K.S.A. § 60-3301 et seq., subsumes plaintiffs' claims and does not permit recovery of purely economic damages.  Defendants argue that plaintiffs have not stated a claim for breach of the implied warranty of merchantability because (1) they have not alleged privity between themselves and defendants, and (2) they have not alleged any present defect in the beverage products.  Defendants argue that plaintiffs have not stated a claim under the KCPA because (1) they have not pleaded their claim with particularity, and (2) they are not aggrieved customers.  Defendants argue that plaintiffs have not stated a claim for unjust enrichment because (1) they did not confer a benefit on defendants, or (2) if they did confer a benefit, it would not be inequitable for defendants to retain such benefit.

**A.     The Kansas Product Liability Act**

Section 60-3302 of the KPLA provides in pertinent part as follows:

(c)    "Product liability claim" includes any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product.  It includes, but is not limited to, any action

---

[7](...continued)
tort and contract law did not establish an injury in fact because contract damages do not create a concrete injury in tort actions.  Id.  Here, plaintiffs do not shift back and forth between tort and contract law; their warranty and consumer protection claims do not attempt to impose tort-based liability on defendants.  Rivera's evaluation of standing in so-called "no-injury products liability actions" is not helpful here.

based on, strict liability in tort, negligence, breach of express or implied warranty, breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent, misrepresentation, concealment or nondisclosure, whether negligent innocent, or under any other substantive legal theory.

(d)     "Harm" includes: (1) Damage to property; (2) personal physical injuries, illness and death; (3) mental anguish or emotional harm attendant to such personal physical injuries, illness or death.  The term "harm" does not include direct or consequential economic loss.

K.S.A. § 60-3302 (c) and (d).  The KPLA applies to all product liability claims regardless of their substantive theory of recovery.  Savina v. Sterling Drug, Inc., 247 Kan. 105, 126, 795 P.2d 915, 931 (1990).  Defendants argue that plaintiffs' claims must be characterized as product liability claims because they complain of defects in defendants' beverage products, and that the claims must be dismissed because the KPLA does not allow recovery for purely economic damages.  Stretching the language of the KPLA beyond its logical limits, defendants bluntly state that Kansas law does not recognize any claim under these circumstances.

Read together, subsections (c) and (d) define a "product liability claim" as one brought for damage to property, personal injury or emotional distress caused by defective products.  This does not mean – as defendants suggest – that Kansas law does not recognize claims for economic damage caused by defective products; it simply means that such claims are not "product liability claims" and must be stated under a different legal theory than the KPLA, e.g. the UCC.  See K.S.A. § 84-2-314 Kan. cmt. 5 (KPLA applies to actions for breach of implied warranty of merchantability claiming personal injury, emotional harm or property damage; KPLA does not apply to warranty cases seeking only economic harm); see also Nw. Ark. Masonry, Inc. v. Summit Specialty Prods., Inc., 29 Kan. App.2d 735, 742, 31 P.3d 982, 987 (2001) (economic loss results from failure of product to perform to level expected by buyer, which is core concern of traditional contract law); Koss Constr. v. Caterpillar, Inc., 25 Kan.

App.2d 200, 203-04, 960 P.2d 255, 258 (1998) (citing Barkley Clark & Christopher Smith, <u>Law of Product Warranties</u> ¶ 12.03(9)(c) (1984)) (most courts respect UCC occupation of field involving purely economic loss, including breach of warranty claims).  Defendants' interpretation of the KPLA would subsume even the most basic contractual dispute arising out of a non-conforming tender of goods, barring such claims and functionally rendering the UCC and accompanying contract law meaningless.  <u>See</u> <u>East River S.S. Corp. v. Transamerica Delaval, Inc.</u>, 476 U.S. 858, 866 (1986) (unchecked expansion of product liability actions would drown contract law "in a sea of tort law").  For this reason, the Court does not agree that the KPLA forecloses plaintiffs' claims.[8]  The Court therefore overrules the motion to dismiss on that ground.

### B.    Plaintiffs' Implied Warranty Of Merchantability Claim

Plaintiffs' implied warranty of merchantability claim is premised on Section 84-2-314 of the UCC, which provides as follows:

> (1) Unless excluded or modified (section 84-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must be at least such as
>
> > (a) pass without objection in the trade under the contract description; and

---

[8]    The Court notes that its conclusion on this issue is consistent with the decisions of other courts which have interpreted product liability statutes similar to the KPLA.  <u>See</u>, <u>e.g.</u>, <u>Paracelsus Healthcare Corp. v. Philips Elecs. N. Am.</u>, No. A3-00-171, 2001 WL 627428, at *3 (D.N.D. May 7, 2001) ("product liability action" under North Dakota products liability act, N.D. Cent. Code § 28-01.3-01, does not include action predicated on UCC and contract law and seeking only economic damages); <u>AT&T Corp. v. Med. Review of N.C., Inc.</u>, 876 F. Supp. 91, 93 (E.D.N.C. 1995) (UCC applies where claim does not fall within scope of "product liability action" under North Carolina product liability act, N.C. Gen. Stat. § 99B-1); <u>Hitachi Constr. Mach. Co. v. Amax Coal Co.</u>, 737 N.E.2d 460, 465 (Ind. Ct. App. 2000) (actions under UCC and products liability act represent two different causes of action; UCC and products liability act provide alternate remedies).

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

K.S.A. § 84-2-314. Defendants argue that the complaint does not state a claim for breach of the implied warranty of merchantability because (1) plaintiffs do not allege privity of contract between themselves and defendants, and (2) plaintiffs do not allege the existence of a present defect in the purchased beverage products.

## I.    Privity

Defendants argue that the Court should dismiss plaintiffs' claim for breach of the implied warranty of merchantability because the complaint does not allege privity of contract between plaintiffs and defendants. The concept of privity "connotes a direct contractual relationship between plaintiff and defendant, and reflects the fact that warranty is at least partly based upon notions of contract." Barkley Clark & Christopher Smith, Law of Product Warranties § 10:1 (2d ed. 2002). Under Kansas law, an implied warranty of merchantability arises by operation of law under Article II of the UCC, which "sets limits on who may assert breach of implied warranty claims."[9] Limestone Farms, Inc. v. Deere & Co.,

---

[9]    Section 84-2-318 of the UCC defines the scope of warranty protection under the UCC as follows:

A seller's warranty whether express or implied extends to any natural person who may

(continued...)

29 Kan. App.2d 609, 614, 29 P.3d 457, 461 (2001).  Where plaintiff complains of personal injury, privity is not required.  Prof'l Lens Plan, Inc. v. Polaris Leasing Corp., 234 Kan. 742, 753, 675 P.2d 887, 897 (1984).  The Kansas Supreme Court has stated, however, that the implied warranty of merchantability "[is] not extended to a remote seller or manufacturer of an allegedly defective product, which is not inherently dangerous, for only economic loss suffered by a buyer who is not in contractual privity with the remote seller or manufacturer."  Id. at 755, 675 P.2d at 898-99.

Plaintiffs concede that they lack privity with defendants who are remote manufacturers and distributors of beverage products, but argue that the KCPA has abolished the privity requirement in consumer transactions under Kansas law.  The KCPA provides as follows:

> Notwithstanding any provision of law, no action for breach of warranty with respect to property subject to a consumer transaction shall fail because of a lack of privity between the claimant and the party against whom the claim is made.  An action against any supplier for breach of warranty with respect to property subject to a consumer transaction shall not, of itself, constitute a bar to the bringing of an action against another person.

K.S.A. § 50-639(b).  In effect, plaintiffs argue that the KCPA substantively modifies the warranty provisions of the UCC and that the privity requirement in economic loss cases expressed in Professional Lens should be limited to non-consumer buyers.  Although Kansas courts have not specifically addressed this issue, the Court finds support for plaintiffs' argument.  Most importantly, the language of Section 50-639(b) broadly waives any privity requirement in all breach of warranty claims despite any other provision of law, including the UCC.  In fact, the comment to Section 50-639(b) states that

_____

[9](...continued)
reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty.  A seller may not exclude or limit the operation of this section.

K.S.A. § 84-2-318.

it "eliminates once and for all the concepts of 'vertical' and 'horizontal' privity." K.S.A. § 50-639(b) cmt. 3; see also K.S.A. 84-2-318 Kan. cmt. 1 (KCPA "has abolished both horizontal and vertical privity in all consumer warranty cases, including cases involving only economic loss").

Further, the idea that the KCPA may effectively alter the operation of the UCC is not a novel one. For example, Section 84-2-316 of the UCC provides that the implied warranty of merchantability may be disclaimed under certain circumstances, see K.S.A. § 84-2-316(2)-(3), but the KCPA declares such disclaimers void with respect to consumer transactions, see K.S.A. § 50-639(e). To the extent that the UCC and the KCPA conflict on this point, the KCPA trumps the UCC. See State ex rel. Stovall v. DVM Enters., Inc., 275 Kan. 243, 255, 62 P.3d 653, 660 (2003) (any attempt to disclaim implied warranties in consumer transactions void in Kansas); K.S.A. § 84-2-316 cmt. 8 (scope of subsections (2) and (3) "severely limited" by KCPA). With regard to privity in consumer transactions, the Kansas Supreme Court has tacitly recognized the cross-application of Section 50-639(b) of the KCPA to breach of implied warranty claims under the UCC. In Stair v. Gaylord, 232 Kan. 765, 659 P.2d 178 (1983), an individual purchased an irrigation system which contained a defective hose from a local dealer. The buyer sued various parties in the chain of distribution, including General Irrigation, which had assembled the component parts of the irrigation system, asserting claims which included breach of the implied warranty of merchantability. Id. 766-68, 659 P.2d at 181-82. The Kansas Supreme Court noted that the UCC applied to the action. Id. at 769-70, 659 P.2d at 183. After concluding that General Irrigation had not made any express warranty, the Kansas Supreme Court considered General Irrigation's liability under the UCC's implied warranty of merchantability. Id. at 771, 659 P.2d at 184. On the issue of privity, the Kansas Supreme Court, citing Section 50-639(b) of the KCPA, noted that "the fact General Irrigation did not sell the hose directly to [plaintiff] is of no consequence." Id. Stair

-13-

suggests that if faced squarely with the issue, the Kansas Supreme Court would hold that Section 50-639(b) of the KCPA serves to abolish the privity requirement of the UCC with respect to breach of implied warranty claims involving consumer transactions.[10]

The Court further notes that the policy bases of the KCPA support its extension to consumer warranty claims under the UCC.  Specifically, the Kansas Supreme Court has stated that the KCPA should be liberally construed to promote the public policies of streamlining the law of consumer transactions and protecting consumers from unscrupulous suppliers.  Williamson v. Armani, 283 Kan. 227, 234, 152 P.3d 60, 67 (2007); see also K.S.A. § 50-623 (outlining policy bases of KCPA).  Because the extension of the implied warranty of merchantability is grounded in public policy, see Professional Lens, 234 Kan. at 754, 675 P.2d at 898, the application of Section 50-639(b) of the KCPA to consumer warranty claims under the UCC is consistent with established law.

Defendants argue that Section 50-639(b) of the KCPA, which states that no action "shall fail because of a lack of privity," does not apply in this case because plaintiffs' implied warranty of merchantability claim does not fail for lack of privity, it fails because purely economic injuries are not recoverable under Section 84-2-318 of the UCC.  Section 84-2-318 of the UCC provides that lack of privity is not a bar to recovery by a natural person who is personally injured by a breach of warranty.  Contrary to defendants argument, Section 84-2-318 does not prohibit recovery for claims of economic

---

[10]        Defendants argue that Stair is not helpful because it involved a claim for property damage to plaintiff's strawberry fields, not economic loss.  Although claims for property damage, like claims for personal injury, are not subject to the same privity restrictions as claims for purely economic loss, see Professional Lens, 234 Kan. at 755, 675 P.2d at 898, Stair's willingness to extend Section 50-639(b) of the KCPA to certain warranty claims under the UCC – despite the fact that such extension was arguably unnecessary – is unmistakable.  In light of the additional authority supporting the extension of Section 50-639(b) to warranty claims under the UCC involving consumer transactions, Stair is at least persuasive authority in this regard.

-14-

damages; it simply does not craft an exception to the general privity requirement for such claims. Indeed, economic damages are clearly recoverable under the UCC where the parties are in privity, meaning that Section 84-2-318 could not be interpreted as a general prohibition against recovery of economic damages.  Under traditional UCC principles noted above, claims for economic damages between non-privies fail precisely because of the lack of privity, making the application of Section 50-639(b) of the KCPA particularly appropriate to consumer warranty claims which would otherwise be barred by the strict privity rule.

Defendants argue that application of KCPA Section 50-639(b) to warranty claims under the UCC will create a new cause of action not contemplated under Kansas law.  As noted above, the language of Section 50-639(b) is broad and the Court finds nothing in either the KCPA or the UCC which would suggest that Section 50-639(b) is not intended to apply to consumer warranty actions under the UCC. Further, Section 50-639(b) does not create a new cause of action; it simply eliminates the privity bar to a consumer's claim for breach of the implied warranty of merchantability – a claim well established under Kansas law.

Defendants further argue that if the Kansas legislature intended to create an exception for claims of economic loss, such exception would appear in the KPLA which was enacted after the KCPA.  This argument is a variation of defendants' argument that the KPLA subsumes plaintiffs' claims.  As noted above, the KPLA provides an exclusive tort-based remedy in product liability actions, and is not concerned with plaintiffs' warranty claims under the UCC.  The Court therefore finds no compelling reason why the KPLA should be expected to include any discussion of privity (a uniquely contractually-based concept) or the exceptions thereto.

Defendants cite Smith v. Ford Motor Co., No. 03-4192-SAC, 2004 WL 838063 (D. Kan.

-15-

Mar. 14, 2004), in support of the proposition that consumer transactions are not excepted from the general privity requirement in warranty claims where only economic damages are sought. <u>Smith</u> involved two individuals who purchased a motor home which defendant manufactured. <u>Id.</u> at *2. After a defect in the fuel injection system caused the motor home to catch fire, plaintiffs sued the manufacturer for breach of the implied warranty of merchantability, seeking economic loss from damage to the motor home. <u>Id.</u> On this claim, <u>Smith</u> noted that "Kansas law is equally clear on the plaintiff's inability to recover economic loss on an implied warranty claim from the remote manufacturer." <u>Id.</u> Defendants argue that since <u>Smith</u> involved a consumer transaction, its holding forecloses the application of Section 50-639(b) of the KCPA to consumer warranty claims.[11] The Court disagrees. <u>Smith</u> was decided as an uncontested motion to dismiss, <u>id.</u> at *1, and does not discuss Section 50-639(b) of the KCPA.[12] In light

---

[11]    Defendants also rely on <u>Limestone Farms</u>, in which the Kansas Court of Appeals, citing <u>Professional Lens</u>, hypothesized that an individual who purchased a defective planter could not maintain a claim for breach of an implied warranty against the remote manufacturer. <u>Limestone Farms</u> did not, however, consider the applicability of Section 50-639(b) of the KCPA. In fact, because the parties in that case intended the planter to be used in the farming operation of plaintiff's limited liability company, <u>see</u> 29 Kan. App.2d at 611, 29 P.3d at 459, it is not clear that the KCPA would have applied on the facts of the hypothetical which the Kansas Court of Appeals offered, <u>see</u> <u>Krestel Holdings, L.L.C. v. Learjet Inc.</u>, 316 F. Supp.2d 1071, 1077 (D. Kan. 2004) (individual who officially transacts on behalf of L.L.C. not "consumer" under KCPA). In any event, on the actual facts of the case, the Kansas Court of Appeals determined that the KCPA did not apply because plaintiff had not purchased the planter himself, and therefore had not engaged in a consumer transaction. Because its discussion of the KCPA is limited and does not include consideration of Section 50-639(b), <u>Limestone Farms</u> is not particularly helpful to the Court's determination of this issue.

[12]    The Court notes that although the Honorable Sam A. Crow decided the motion as uncontested, he also considered the merits of the argument. <u>See</u> <u>Smith v. Ford Motor Co.</u>, No. 03-4193-SAC, 2004 WL 1834636, at *1 (D. Kan. May 4, 2004) (explaining ruling on motion to reconsider). Despite this fact, the Court is not convinced that <u>Smith</u> is persuasive in this case. <u>Smith</u> relied heavily on the Kansas Supreme Court opinion in <u>Professional Lens</u>. Specifically, <u>Smith</u> recited the rule from <u>Professional Lens</u> that the implied warranty of merchantability does not extend to a remote manufacturer for only economic loss suffered by a non-privy buyer. 2004 WL 838063, at *2.
    Taken at face value, one may interpret the holding in <u>Professional Lens</u> to apply to all buyers,

(continued...)

of this omission, as well as the Kansas Supreme Court opinion in <u>Stair</u> and the additional evidence which suggests that Section 50-639(b) should apply to consumer warranty actions under the UCC, <u>Smith</u> is not persuasive on this issue.

The Court finds that Section 50-639(b) of the KCPA has abolished any privity requirement in an action for breach of the implied warranty of merchantability involving a consumer transaction under Kansas law.  Defendants do not suggest that the events which give rise to this action did not constitute consumer transactions.  Accordingly, the Court overrules defendants' motion on the ground that plaintiffs have not alleged privity.

### ii. Present Defect In Defendants' Beverage Products

Defendants argue that the Court should dismiss plaintiffs' claim for breach of the implied warranty of merchantability because the complaint does not allege a present defect in defendants' beverage products.  Under Section 84-2-314 of the UCC, merchantable products are those which "are fit for the ordinary purposes for which such goods are used."  K.S.A. § 84-2-314(2)(c).  To state a claim

---

[12](...continued)
consumer and non-consumer.  In <u>Professional Lens</u>, however, the Kansas Supreme Court described the issue before it as a "question of whether Kansas permits a <u>corporate</u> ultimate purchaser, who has incurred only economic loss . . . to recover on theories of breach of implied warranty of fitness and merchantability, from a manufacturer with whom the ultimate purchaser was not in contractual privity." 234 Kan. at 745, 675 P.2d at 891 (emphasis added).  Thus, while the ultimate holding of <u>Professional Lens</u> may appear to concern all buyers, its reach may be more narrowly interpreted in light of the actual issue before the Kansas Supreme Court.  At least one Kansas Court of Appeals decision has drawn this more limited interpretation of <u>Professional Lens</u>.  In <u>Koss Construction</u>, the Kansas Court of Appeals considered lack of privity in a breach of implied warranty claim brought by one corporation against another.  25 Kan. App.2d at 207, 960 P.2d at 260.  Following a thorough discussion of <u>Professional Lens</u>, including a recitation of the issue raised in that case, the Kansas Court of Appeals concluded that "absent privity, a <u>corporate</u> purchaser who has incurred only economic loss may not maintain a cause of action for breach of the implied warranty of merchantability against a manufacturer."  <u>Id.</u> at 209, 960 P.2d at 261 (emphasis added).  This suggests that <u>Professional Lens</u> may leave room for a privity exception where non-corporate consumers are involved.  The privity exception created by Section 50-639(b) of the KCPA therefore does not appear to create a per se contradiction with <u>Professional Lens</u>.

for breach of the implied warranty of merchantability, plaintiffs must allege that the goods were defective, that the defect was present when the goods left the manufacturer's control and that the defect caused plaintiffs' injuries. Vanderwerf v. SmithKlineBeecham Corp., 414 F. Supp.2d 1023, 1026 (D. Kan. 2006) (citing Dieker v. Case Corp., 276 Kan. 141, 162, 73 P.3d 133, 146-47 (2003)). Under Kansas law, a breach of the implied warranty of merchantability may be proven through circumstantial evidence concerning plaintiffs' reasonable expectations as to the function of the product. Don Schmid Motor, Inc.v . Peugeot Motors of Am., Inc., 232 Kan. 458, 467, 657 P.2d 517, 525 (1983). Kansas courts equate the concept of fitness for ordinary purpose in Section 84-2-314(2)(c) of the UCC with the concept of defect in tort law. Miller v. Lee Apparel Co., 19 Kan. App.2d 1015, 1031, 881 P.2d 576, 588 (1994). To establish a sufficient defect under tort principles, the circumstances shown must justify an inference of probability of defectiveness as distinguished from mere possibility. Dieker, 276 Kan. at 162, 73 P.3d at 147.

Defendants argue that plaintiffs have not sufficiently alleged a present defect because the complaint does not allege that defendants' beverage products contain benzene or that plaintiffs suffered any injury from any defect. Plaintiffs respond that the complaint alleges the tendency of defendants' beverage products to contain benzene, which is a cognizable defect. Defendants have cited no case law which suggests that plaintiffs' claim must fail as a matter of law. The question whether defendants' beverage products probably contained benzene or possibly contained benzene is one of degree which is not properly resolved on the motion to dismiss. Plaintiffs have alleged the tendency, which the Court may interpret as the "probability" that defendants' beverage products contain benzene and have caused economic damages to plaintiffs. Construing the complaint in favor of plaintiffs, the Court finds that it is sufficient to state a claim for breach of the implied warranty of merchantability under Kansas law.

Accordingly, the Court overrules defendants' motion on the ground that plaintiffs have not alleged a present defect in defendants' beverage products.

### C.      Plaintiffs' KCPA Claim

Plaintiffs' unfair trade practices claim is premised on Sections 50-626 and 50-627 of the KCPA, which prohibit suppliers from engaging in deceptive and unconscionable acts in connection with consumer transactions.   Defendants argue that plaintiffs have not stated a claim under the KCPA because (1) they have not pleaded their claim with particularity, and (2) they are not aggrieved customers.

### I.      Particularity Of Plaintiffs' Claim

Allegations of unfair trade practices under the KCPA must be pleaded with particularity in accordance with Rule 9(b).   Thompson v. Jiffy Lube Int'l, Inc., No. 05-1203-WEB, 2007 WL 1218018, at *22 (D. Kan. Apr. 23, 2007); see Fed. R. Civ. P. 9(b) (circumstances constituting fraud shall be stated with particularity).   For purposes of Rule 9(b), particularity includes the time, place and content of the alleged wrongful conduct, as well as the identities of the wrongdoers and the harm caused by plaintiffs' reliance on any false representation.   See Krestel Holdings, 316 F. Supp.2d at 1078.   Here, the Court has little difficulty concluding that plaintiffs' KCPA claim is pleaded with sufficient particularity.   Specifically, the complaint clearly alleges the time frame in which defendants' conduct occurred (i.e. defendants learned of the potential presence of benzene in their beverage products in 1990 and continued to market those products); the place of the alleged fraudulent conduct (i.e. defendants introduced their products into the national stream of commerce, including Kansas); and the substance of the alleged fraudulent conduct (i.e. defendants willfully failed to disclose to consumers the potential presence of benzene in their products).   Moreover, the complaint sets forth the identities of the

defendants (i.e. Pepsi, Sunny Delight, Rockstar and Coke Enterprises),[13] and plaintiffs' injuries (i.e. economic loss caused by defendants' failure to notify consumers of the potential presence of benzene in their products).  Accordingly, the Court overrules defendants' motion on the ground that plaintiffs have not stated their KCPA claim with particularity.

### ii.    Plaintiffs As Aggrieved Customers

Under the KCPA, only aggrieved consumers may recover money damages.  See K.S.A. § 50-634(a)-(b); see also Finstad v. Washburn Univ., 252 Kan. 465, 472, 845 P.2d 685, 691 (1993) (non-aggrieved consumers may not recover damages or civil penalties under KCPA).  The Kansas Supreme Court has defined an aggrieved consumer as one who suffers loss or injury as a result of a violation of the KCPA.  Finstad, 252 Kan. at 473, 845 P.2d at 691; see also Caputo v. Prof'l Recovery Servs., Inc., 261 F. Supp.2d 1249, 1261 (D. Kan. 2003) (to bring individual action for damages under KCPA, plaintiff must suffer loss or injury through violation of KCPA).  To properly allege an action under the KCPA, plaintiffs need only claim to have suffered actual damage as a result of some alleged KCPA violation.  Griffin v. Sec. Pac. Auto. Fin. Servs. Corp., 33 F. Supp.2d 926, 931 (D. Kan. 1998).

Defendants argue that plaintiffs were not injured because they received what they paid for when they purchased defendants' beverage products and did not suffer physical injury.  For this proposition, defendants rely on Porter, an unpublished Kansas district court opinion involving Vioxx, a prescription

---

[13]    The parties have not specifically addressed the presence of John Doe defendants in this case or plaintiffs' ability to reconcile Rule 9(b)'s particularity requirement with these unidentified manufacturers and distributors.  Some courts hold that John Does may not be named under Rule 9(b).  See Silverstein v. Percudani, 422 F. Supp.2d 468, 473 n.3 (M.D. Pa. 2006) (fictitious party pleading runs afoul of Rule 9(b)); In re Desmond, 334 B.R. 78, 87 (D.N.H. 2005) (failure to identify John Doe defendants violates Rule 9(b)).  The Court therefore orders plaintiffs to show good cause in writing **on or before June 8, 2007**, why it should not dismiss their claims against John Does six through 100 under the KCPA for failure to plead such claims with particularity.

pain reliever.  2005 WL 3719630, at *1.  In dismissing plaintiff's KCPA claim, <u>Porter</u> noted that plaintiff had "suffered no physical injury and received a drug that provided relief for her pain.  Thus, she has no loss."  <u>Id.</u> at *3.  Here, as noted above, plaintiffs have sufficiently alleged a defect in defendants' beverage products which made those products unfit for their ordinary purpose and reduced their value so as to cause plaintiffs economic loss.  The Court finds nothing in established case law which suggests that a claim under the KCPA cannot be maintained on the basis of economic harm.  In light of plaintiffs' claimed economic loss, the Court finds <u>Porter</u>'s reliance on a lack of personal injury unpersuasive.  Taking plaintiffs' allegations as true, the Court cannot conclude that plaintiffs can prove no set of facts which would entitle them to relief for alleged economic loss suffered as a result of defendants' conduct.

Defendants further argue that even if plaintiffs suffered a loss or injury, they have not alleged any causal connection between that harm and defendants' conduct which would make them aggrieved consumers under the KCPA.  To the contrary, plaintiffs allege that they would not have purchased defendants' beverage products but for defendants' wrongful failure to disclose the tendency of those products to contain benzene.  This allegation sufficiently states that plaintiffs' economic injury resulted from defendants alleged violations of the KCPA.  Accordingly, the Court overrules defendants' motion on the ground that plaintiffs are not aggrieved consumers under the KCPA.

### D.    Plaintiffs' Unjust Enrichment Claim

Under Kansas law, "[t]he substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscious belongs to him."  <u>J.W. Thompson Co. v. Welles Prods. Corp.</u>, 243 Kan. 503, 511, 758 P.2d 738, 744 (1988).  To state a claim for unjust enrichment, plaintiffs must allege (1) a benefit which they conferred

upon defendants; (2) defendants' appreciation or knowledge of the benefit; and (3) defendants' acceptance or retention of the benefit under circumstances which make it inequitable for defendants to retain the benefit without payment of its value.  Id.

Defendants argue that plaintiffs do not state a claim for unjust enrichment because they do not allege that they made a purchase directly from defendants, and therefore do not allege that they conferred a benefit upon defendants.  A claim for unjust enrichment under Kansas law, however, does not depend on privity.  Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd., 259 Kan. 166, 177, 910 P.2d 839, 847 (1996).  Because a benefit may be conferred indirectly, the Court cannot conclude that plaintiffs did not confer a benefit on defendants when they purchased defendants' beverage products through local retailers.

Defendants further argue that plaintiffs have not alleged inequitable retention of any benefit without payment of its value because plaintiffs received the beverage products which they purchased. Plaintiffs respond that they did not receive appropriate value for their purchases because defendants' beverage products had a tendency to contain benzene.  As discussed above, plaintiffs have sufficiently alleged defects in defendants' beverage products.  Based on the alleged defects, the Court cannot conclude as a matter of law that defendants did not inequitably retain a portion of the purchase price which plaintiffs paid for defendants' beverage products.  The Court therefore overrules defendants' motion to dismiss plaintiffs' unjust enrichment claim.

### III.    Primary Jurisdiction Of The FDA

Defendants argue that the Court should stay or dismiss this action in favor of the FDA's primary jurisdiction to resolve issues involving benzene levels in beverage products.  Primary jurisdiction is a prudential doctrine designed to allocate authority between courts and administrative agencies.  S. Utah

Wilderness Alliance v. Bureau of Land Mgmt., 425 F.3d 735, 750 (10th Cir. 2005).  The doctrine is properly invoked where a decision by a court would threaten the uniformity of a regulatory scheme or require the court to confront issues of fact outside of its conventional experience.  Id. at 751 (citing United States v. W. Pac. R.R., 352 U.S. 59, 64 (1956)).  In such cases, a court may suspend the judicial process and direct the parties to seek a decision before the appropriate administrative agency, which then assumes primary jurisdiction.  Id.

Defendants assert that this case requires substantial scientific and technical expertise to evaluate the safety of food additives such as sodium benzoate, ascorbic acid, citric acid and erythoribic acid. They contend that the judicial system is not well suited to assess the conditions under which benzene might form, the methods which inhibit its formation, the concentration of benzene which presents an unacceptable risk to consumers and the warnings necessary to protect consumers against its risk.  At this stage of the litigation, however, the Court need not make any such factual determinations.  Indeed, because the motion to dismiss simply tests the sufficiency of plaintiffs' allegations, the Court is confident that it may decide the motion within its normal experience without impinging on the FDA's regulatory scheme or area of expertise.  The Court therefore declines to defer primary jurisdiction of this case to the FDA.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion To Dismiss Second Amended Complaint (Doc. #37) filed November 14, 2006 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Leave To File Sur-Reply Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #55) filed January 26, 2007 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that on or before June 8, 2007, plaintiffs shall show good cause in writing why the Court should not dismiss their claims against John Does six through 100 under the KCPA for failure to plead such claims with particularity.

Dated this 24th day of May, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge